33 C.C.P.A. (Patents)

### In re WEIJLARD et al.
### Patent Appeals No. 5098.

Court of Customs and Patent Appeals.

March 4, 1946.

Joseph N. Nielsen, of New York City (Thomas F. H. Leyden, of New York City, of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the action of the Primary Examiner in finally rejecting, as noninventive over prior art cited, all the claims (eight in number) of appellants' application, serial No. 382,946, for patent on "Crystalline Non-Hygroscopic Calcium Pantothenate and Process of Preparing the Same."

Claims numbered 1, 2, 3, and 4 are drawn to the product, and claims 5, 6, 7, and 8 to the process of making it.

Claim 1 is the broadest of the product claims, and claim 5 the broadest of the process claims. They read:

"1. Crystalline nonhygroscopic calcium pantothenate, substantially insoluble in methanol at ordinary room temperature, and exhibiting anisotropism when examined under polarized light.

"5. The process of making hygroscopic calcium pantothenate nonhygroscopic comprising crystallizing said hygroscopic salt from a lower aliphatic alcohol."

The limitations in the other claims are not of importance so far as the issue here involved is concerned, and those claims need not be quoted since, concededly, all the claims stand or fall together.

The only reference cited is an article described in the decisions below as "Williams et al., J. Am. Chem. Soc., Vol. 60, pp. 2719-22."

As we understand it, appellants' product is a vitamin in crystalline form. We further understand that the original "raw material" source (or at least the "richest convenient natural source") is liver. However, no processing of the basic material is involved in this controversy.

Stated in simple terms, appellants took a hygroscopic (or amorphous) substance which had been derived from liver (or possibly some other material), and rendered it nonhygroscopic by elimination of most of the moisture content. In the application it is said:

"Calcium pantothenate has heretofore existed only in a form which is extremely hygroscopic, and therefore has many disadvantages.

"We have discovered that a nonhygroscopic miscrocrystalline calcium pantothenate can be obtained by crystallizing the hygroscopic product, or a crude syrupy product containing the same, from a lower aliphatic alcohol, such as methyl, ethyl, isoprophyl alcohol, etc. The hygroscopic or syrupy calcium pantothenate is readily

soluble in these alcohols, and crystallizes out *when the solution is permitted to stand for several days.* The product thus obtained is very definitely crystalline, either as needles or plates, is no longer hygroscopic, and is well suited to any use." (Italics supplied.)

Appellants' contention may be best understood by first quoting from the decision of the board (which followed, expressed in somewhat different phraseology, the findings and holdings of the examiner) the following:

"Claims 1 to 4, inclusive, drawn to the product, stand rejected on the ground that they define a product which is old, as disclosed in the article by Williams and others, cited by the Examiner. The compound disclosed in this article appears to be in amorphous form, 'substantially' pure and is said to be hygroscopic. The compound claimed is stated to be crystalline and nonhygroscopic. The Examiner considers the crystalline product a purer form of the compound than the substantially pure amorphous form of the reference and there appears to be no question but that the two forms are chemically identical. Appellants urge strongly that they did not merely produce a purer product than that disclosed in the reference, but started with the amorphous form, already purified, and proceeded to crystallize the material.

"It has long been the practice in the chemical and pharmaceutical arts to produce compounds in the form of crystals to secure a pure product and for other reasons. In this case we see no patentable distinction between the crystalline compound defined in the claims and the substantially pure amorphous product of the reference. In arriving at this conclusion the relative hygroscopicity of the two forms has not been overlooked, but it is our opinion that there is nothing whatever patentable in the concept of a chemical compound in cry[s]talline form over the same compound in its amorphous form. It is to be expected that some advantage will result as between two forms of the compound even though the advantage may be unforeseeable. It is not seen that inherent differences between the two forms render claims to the crystalline form allowable over a clear disclosure of the compound in its previously known amorphous form.

"Claims 5 to 8, inclusive, to the process, call for crystallizing the hygroscopic salt from a lower aliphatic alcohol. The reference discloses precipitation of the salt from a lower aliphatic alcohol solution with isopropyl ether as a part of the concentration and purification technique there described, but does not disclose the step of 'crystallizing.' Further, the reference is not concerned with a process of making the hygroscopic material nonhygroscopic. However, in essence, these claims are considered to be for nothing more than the broad concept of crystallizing out the salt from an alcohol. The use of alcohol is old practice for crystallizing, as the Examiner points out, and since the claims teach the art no new process, at least one that would not be obvious to the skilled worker in this field, for the crystallization of calcium pantothenate, it is our opinion that the claims are unpatentable.

"The claims are broadly drawn and we agree with the Examiner that the process step defined is broadly old. No invention is seen in its broad application to a specific compound."

At one point in their brief appellants seem to question the accuracy of some of the statements of fact made in the decisions below, but we do not find them challenged in the reasons of appeal, and, at any rate, as is pointed out by the Solicitor for the Patent Office, "* * * appellants did not request that these statements be supported by an affidavit, as they were entitled to do under Patent Office rule 66, 35 U.S. C.A. Appendix and did not present any factual evidence to controvert them." They are not, therefore, in a position to have any question of such accuracy considered here. In re Lewis, 96 F.2d 1009, 25 C.C.P.A., Patents, 1273.

So far as the reference article is concerned, it concededly did not relate to a crystallized product, but to an amorphous product produced from what had previously been named "panothenic acid," which in turn had been derived from liver.

As we understand appellants' application and claims, the product of the reference may be regarded as their "starting material," and, as we understand the decisions below, the tribunals of the Patent Office did not believe that invention was involved in producing a crystallized product in view of the well-known state of the art respecting the crystallization of substances from a lower aliphatic alcohol such as the types named in the specification.

Following the board's decision, rendered July 5, 1944, appellants, on July 20, 1944,

filed a petition for reconsideration presenting therewith an affidavit by one Gruber. The board considered the affidavit "as a part, of the argument in the petition," but in a second decision adhered to its original conclusion.

 The affidavit is referred to in one of appellants' reasons of appeal and is discussed in their brief before us. It was never before the examiner (see Patent Office rule 138, 35 U.S.C.A. Appendix) and it is not incumbent upon us to consider it here. In view of the fact that the board did consider it in the manner stated, the assumption is that no facts were stated in it which led that tribunal to feel that its former decision should be altered.

We are not convinced of any error in the decision appealed from and the same is affirmed.

Affirmed.